STATE OF NORTH CAROLINA  FILED  IN THE GENERAL COURT OF JUSTICE
DURHAM COUNTY  2022 JUN 15 PM 4:21  SUPERIOR COURT DIVISION
CASE NO. 22 CVS 002525
DURHAM CO., C.S.C.
BY

PHYLISS CRAIG-TAYLOR, )
)
Plaintiff, )
) **COMPLAINT**
v. )
) **JURY TRIAL DEMANDED**
)
NORTH CAROLINA CENTRAL )
UNIVERSITY, through the BOARD OF )
GOVERNORS OF THE UNIVERSITY OF )
NORTH CAROLINA, )
)
Defendant. )
)

## I. INTRODUCTION

1. Plaintiff, Phyliss Craig-Taylor, by and through the Undersigned, files this Complaint against North Carolina Central University through the Board of Governors of the University of North Carolina ("NCCU" and "Defendant"), for violations of the Americans with Disabilities Act ("ADA") (Count 1) and Family Medical Leave Act ("FMLA") (Count 2).

## II. PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a resident of Durham County, North Carolina.

3. NCCU is a component of the University of North Carolina system, a state institution and government body, established pursuant to the laws of the State of North Carolina.

4. NCCU is located in Durham County, North Carolina.

1

Case 1:22-cv-01065   Document 1-3   Filed 12/09/22   Page 1 of 10

5. NCCU is, and was at all relevant times, an "employer" under the ADA which regularly employed fifteen (15) or more employees and was subject to the provisions of N.C. Gen. Stat § 143-422.2 *et seq.*

6. NCCU is, and was at all relevant times, a covered employer under the FMLA, and Plaintiff worked for NCCU in excess of one year and for the requisite 1,250 hours within the preceding calendar year to be a covered employee.

7. Plaintiff seeks damages in a sum sufficient that subject matter jurisdiction is properly vested in the Superior Court division pursuant to N.C. Gen. Stat. § 7A-243 *et seq.*

8. Venue is proper in this Court pursuant to N.C. Gen. Stat. § 1-82.

### III.  GENERAL FACTUAL ALLEGATIONS

9. In July 2012, Ms. Craig-Taylor began her employment as Dean of NCCU's School of Law ("School of Law"). From July 2018 to the present, she has been a full-time, tenured Professor of Law.

10. From her start date through the present, she has maintained a positive employment record. She never received a written warning or negative review.

11. In fact, NCCU awarded Ms. Craig-Taylor multiple merit salary increases during her employment.

12. Ms. Craig-Taylor also received several prestigious national appointments and recognitions. President Obama appointed her to serve on the President's Advisory Board for Historically Black Colleges and Universities, the Chief Justice of the North Carolina Supreme Court appointed her to serve on the Chief Justice's Commission on Professionalism, and the American Bar Association ("ABA") appointed her to serve on the Commission on Racial and

Ethnic Justice. Additionally, she was selected as Tar Heel of the week by Raleigh News and Observer for successfully championing Historically Black Colleges and Universities.

13. On around December 2018, Ms. Craig-Taylor requested and was approved for three months of FMLA leave relating to a diagnosis of acute anxiety and situational depression. These diagnoses compounded a pre-existing condition, Meniere's Disease which affected her hearing and balance resulting in her having several falls.

14. When Ms. Craig-Taylor returned on or around April 1, 2019, NCCU subjected her to a retaliatory and disability based hostile work environment, and discriminated against her in the terms and conditions of her employment. Provost Felicia Nave took steps to humiliate and embarrass Ms. Craig-Taylor. For example, Provost Nave re-assigned Ms. Craig-Taylor's office to the School of Law Development Office, which effectively exiled her from the law students and law professors, and broadcast to everyone in the School of Law that Ms. Craig-Taylor was an outcast and unwelcome by the University and School of Law administrations. Provost Nave also prohibited Ms. Craig-Taylor from responding to questions or concerns that were shared with her by students or colleagues, instead directing her to forward any such communications in writing to the Interim School of Law Dean Elain O'Neal.

15. From there, Interim Dean O'Neal further intensified the hostile work environment and discriminatory actions. For example, on or around April 2019, Ms. Craig-Taylor requested summer research and writing stipend for the summer of 2019. While all other faculty requests appeared to be paid that summer, Ms. Craig-Taylor's request was not. On or around July 2019, Ms. Craig-Taylor requested additional travel expenses in connection with her position as Good Works Coordinator with the ABA She was only granted $1,500 for travel, which fell far short of

3

allowing her to travel this to out-of-town meeting and well below the travel budgets of other faculty.

16. On or around July 22, 2019, Interim Dean O'Neal sent a deeply hurtful, insulting, and defamatory email to Ms. Craig-Taylor and copied a host of other leaders at the School of Law and the University, including Chancellor Johnson Akinleye.

17. On July 24, 2019, Interim Dean O'Neal and Ms. Craig-Taylor met to discuss the email. Dean O'Neal lambasted Ms. Craig-Taylor. She asked, "Why do you make more money than I do?" After belittling Ms. Craig-Taylor's salary, Interim Dean O'Neal began attacking Ms. Craig-Taylor's disability. She repeatedly asked, "what is wrong with you?'" "Can't you hear?", specifically referencing her Meniere's Disease, which affects Ms. Craig-Taylor's hearing and balance. Interim Dean O'Neal piled on, "The school's administration thought you had enough sense to get another job and not return to NCCU. You are not wanted in this building." Dean O'Neal also falsely accused Ms. Craig-Taylor of not raising any funds for the law school and threatened to inform the public of this false accusation. Dean O'Neal's proliferation of these false statements defamed Ms. Craig-Taylor's reputation, as a central job duty of the Dean position is to raise funds.

18. On July 24, 2019, Ms. Craig-Taylor emailed Chancellor Akinleye and Provost Nave stating, "I am requesting a meeting as soon as possible to discuss among other things the discrimination, harassment, the hostile work environment and defamation of my personal and professional character." No help was forthcoming; Ms. Craig-Taylor never even received a response, let alone one that would remedy the serious legal concerns she raised. NCCU simply made no attempt to provide Ms. Craig-Taylor a work environment free from retaliation and

4

discrimination; policies prohibiting discrimination and retaliation were by all accounts left on the shelf.

19. NCCU's retaliatory hostile work environment toward Ms. Craig-Taylor continued unabated throughout Dean O'Neal's tenure, which ended in June 2020. Dean O'Neal continuously made negative comments regarding Ms. Craig-Taylor's salary to alumni and others on the law school staff, and falsely portrayed herself as having to save the law school's accreditation, when in fact, the law school had not received any warning, sanction, or recommendation to be placed on probation by the ABA. Prior to these untrue statements, in June 2018, the ABA Section of Legal Education Accreditation Committee found the School of Law in compliance with the one accrediting standard that was in-question. Despite the facts, Dean O'Neal continued to propagate these false comments.

20. Likewise, NCCU continued to retaliate against Ms. Craig-Taylor with respect to compensation. For example, Ms. Craig-Taylor was assigned to teach an overload class (a professional responsibility evening class) for the spring 2020 semester. She was a team player and agreed, and should have been paid extra for the overload class by the end of the fiscal year, June 30, 2020. Even though she followed up repeatedly, the University has still not paid the compensation due. NCCU has also refused to pay Ms. Craig-Taylor for PTO time she is due since stepping down from Dean despite her repeated requests.

21. As the School of Law awarded Chair roles and publicly recognized faculty accomplishments, Ms. Craig-Taylor was consistently passed over and ignored. For example, it was routine for the School of Law to promote and publicize any external activity by faculty even as minor as speaking at conferences. Yet, when Ms. Craig-Taylor received prestigious national and state appointments, NCCU did not promote or publicize the achievements for her.

22. And to this day, Ms. Craig-Taylor is the only Dean of the School of Law to not have her portrait hung, a daily reminder to her, students, and faculty that she is shunned and disrespected.

23. NCCU's withering retaliatory and discriminatory conduct toward Ms. Craig-Taylor has not forced her resignation, even though that appears to have been the objective. However, it did take a heavy toll on Ms. Craig-Taylor both physically and emotionally. Her anxiety and depression worsened considerably, as did the effects of her Meniere's Disease, resulting in several serious falls.

24. Plaintiff filed an EEOC charge on September 18, 2020. After re-opening the investigation, the EEOC issued a right to sue letter on February 25, 2022. Plaintiff filed an Application for Extension on May 26, 2022, within 90 days of receiving the right to sue letter. Plaintiff filed this complaint within twenty days of the entry of the Application for Extension Order. Plaintiff asserts the continuing violation theory, such that her retaliatory hostile work environment claims reach back to the inception of NCCU's retaliatory conduct toward her.

### III. LEGAL CLAIMS

### COUNT ONE
(*Violations of the Americans with Disabilities Act*)

25. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

26. Plaintiff was qualified as an individual with a disability because she was actually disabled and otherwise perceived by Defendant as having a physical or mental impairment that was not transitory and minor. Specifically, Plaintiff has been diagnosed with anxiety and depression that substantially limits one or more major life activities and major bodily functions

(including her neurological and brain functioning). Plaintiff's physical and mental impairments worsened as a result of Defendant's unlawful actions requiring medication and therapy.

27. Defendant violated the ADA by subjecting her to disparate treatment in the terms and conditions of employment after she returned from medical leave because of her disabilities and/or because she engaged in protected activity under the ADA by taking a protected medical leave, and lodging an internal complaint of discrimination and retaliation.

28. Defendant further violated the ADA by subjecting Plaintiff to a retaliatory hostile work environment that was severe and pervasive. After returning from leave, Plaintiff's workplace was permeated by public humiliation, abuse, insults, and discriminatory treatment. Defendant did not hide its true intent—Plaintiff was not wanted or expected to return from medical leave. Interim Dean O'Neal openly mocked Plaintiff's disability. Furthermore, when Plaintiff went to Defendant's Chancellor and senior administration for help, they not only failed to take remedial action to stop the unlawful conduct, they magnified and condoned the retaliatory treatment by ignoring Plaintiff's internal complaint. The aforementioned hostile work environment has been so severe and lasted so long that Plaintiff's disabilities have worsened considerably requiring additional medical treatment.

29. No reasonable person would elect to engage in protected activity under the ADA at NCCU and certainly not at the School of Law after witnessing what Plaintiff endured.

30. Defendant has abrogated sovereign immunity for claims arising under the ADA. N.C.G.S. § 143-300.35. Upon information and belief, Defendant has otherwise waived sovereign immunity through the purchase of insurance covering these claims.

31. Defendant's actions actually and proximately caused Plaintiff compensatory damages. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost wages, lost

benefits, emotional distress, anxiety, humiliation, and damage to her reputation, and is entitled to recover compensatory damages.

## COUNT TWO
### (Retaliation in Violation of the Family and Medical Leave Act)

32. The allegations in the foregoing paragraphs are incorporated by reference herein.

33. At all times relevant, Plaintiff was an eligible "employee" of Defendant as defined by the FMLA. *See* 29 C.F.R. § 825.110.

34. At all times relevant, Defendant was a covered "employer" as that term is defined by FMLA. *See* 29 C.F.R. § 825.104.

35. Plaintiff was entitled to 12 weeks of protected medical leave under the FMLA.

36. Plaintiff returned within 12 weeks of her FMLA leave.

37. After Plaintiff returned from protected leave, Defendant retaliated against her for exercising her rights under the FMLA by: (i) subjecting her to a retaliatory hostile work environment; and (ii) subjecting her to disparate treatment in compensation and benefits compared to colleagues who did not take FMLA leave.

38. Defendant further violated the FMLA by subjecting Plaintiff to a retaliatory hostile work environment that was severe and pervasive. Plaintiff's workplace was permeated by public humiliation, abuse, insults, and discriminatory treatment. Furthermore, NCCU through its words and actions explicitly conveyed to Plaintiff that she was not welcome and should resign. School of Law leadership openly mocked her disability and told her explicitly they expected to force her out. And when Plaintiff went to NCCU's Chancellor and senior administration for help, they not only failed to take remedial action to stop the unlawful conduct, they magnified and condoned the retaliatory treatment by literally ignoring Plaintiff's discrimination and retaliation report. The

8

aforementioned hostile work environment has been so severe that her medical conditions worsened considerably requiring additional medical treatment.

39. No reasonable person would elect to engage in protected activity at NCCU and certainly not at the School of Law after witnessing what Plaintiff endured.

40. The State of North Carolina has abrogated sovereign immunity for claims arising under the Family Medical Leave Act. N.C.G.S. § 143-300.35. Upon information and belief, Defendant has otherwise waived governmental immunity through the purchase of insurance covering these claims.

41. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result, Plaintiff is entitled to recover liquidated damages and a three-year statute of limitation applies. Among other things, Defendant's willfulness is demonstrated by: (i) its failure to even respond to Plaintiff's July 24, 2019, internal complaint in which she outlined the discrimination and retaliatory conduct she was being subjected to since returning from medical leave; and (ii) Interim Dean O'Neal's mocking and ridiculing of Plaintiff's disability and other malicious statements.

42. Defendant's actions actually and proximately caused Plaintiff damages. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, anxiety, humiliation, and damage to her reputation, and is entitled to recover compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

1. Enter a judgement against Defendant and order Defendant to pay Plaintiff compensatory damages in excess of the sum sufficient for subject matter jurisdiction to be properly

9

Case 1:22-cv-01065   Document 1-3   Filed 12/09/22   Page 9 of 10

vested in the Superior Court division pursuant to N.C. Gen. Stat. § 7A-243.

2. Award Plaintiff liquidated (double) damages equal to all wages and benefits that she would have received but for the retaliation, plus prejudgment interest;

3. Award Plaintiff punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq.* and 42 U.S.C. § 12117(a);

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances, including reinstatement to her previous position or front pay.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a trial by jury of the allegations contained in this Complaint.

This the 15th day of June, 2022.

*[signature]*

Joshua R. Van Kampen (NC Bar No. 32168)
Noël Harlow, Esq. (NC Bar. No. 55709)
Van Kampen Law, PC
315 E. Worthington Avenue
Charlotte, NC 28203
Phone: (704) 247-3245
Fax: (704) 749-2638
Email: josh@vankampenlaw.com
*Attorney for Plaintiff*